IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

— — —

THE HONORABLE ANDREW S. HANEN, JUDGE PRESIDING

UNITED STATES OF AMERICA,       )
    Plaintiff,              )
                     )
v.                              )      NO. 4:22-cr-440-1
                     )
SOHIL USMANGANI VAHORA,         )
    Defendant.              )

**RE-ARRAIGNMENT HEARING**

OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS
Houston, Texas
October 23, 2023

APPEARANCES:

For the Plaintiff:
  Stephanie Coon Bauman, Esq.
  Office of U.S. Attorney
  1000 Louisiana Street, Suite 2300
  Houston, Texas 77002
  Email: stephanie.bauman@usdoj.gov
  Telephone: 713-567-9419

For the Defendant:
  Anthony P. Troiani, Esq.
  Law Office of Anthony Troiani, P.C.
  5020 Montrose Boulevard, Suite 700
  Houston, Texas 77006
  Email: anthony @troianilaw.com
  Telephone: 713-520-7701

Reported by:   Mary Nancy Capetillo, CSR, RPR, TRR
               Official Court Reporter
               United States District Court
               Southern District of Texas
               nancycapetillo133@gmail.com

Proceedings reported by computerized stenotype
machine.

**PROCEEDINGS**

09:21:35  1

09:21:42  2          THE COURT:  Mr. Troiani, does Mr. Vahora

3  speak English?

09:21:47  4          MR. TROIANI:  He does, Your Honor.

09:22:04  5          MS. BAUMAN:  Stephanie Bauman for the

6  United States, Your Honor.

09:22:07  7          MR. TROIANI:  Your Honor, Anthony Troiani

8  on behalf of Mr. Vahora.

09:22:16  9          THE COURT:  Rhonda, will you swear in

10  Mr. Vahora?

09:22:21 11          (Defendant sworn.)

09:22:22 12          THE COURT:  All right.  Mr. Vahora, you

13  understand you've been placed under oath; and as such

14  you need to give truthful responses to any questions

15  that you're asked?

09:22:31 16          THE DEFENDANT:  Yes.

09:22:31 17          THE COURT:  If I ask you a question that

18  you don't understand or don't hear, will you be sure and

19  let me know so I can fix that problem?

09:22:38 20          THE DEFENDANT:  Yes, Your Honor.

09:22:38 21          THE COURT:  All right.  You're doing a

22  good job so far but if you'd continue to always answer

23  verbally out loud.  I can see you nod your head or shake

24  your head, but the court reporter needs a verbal

25  response.  All right?

09:22:50   1                    THE DEFENDANT:  Yes, Your Honor.

09:22:51   2                    THE COURT:  All right.  If you need to

           3   visit with Mr. Troiani at any point in time, let me

           4   know; and I'll let you do that privately.  Okay?

09:22:57   5                    THE DEFENDANT:  Yes, Your Honor.

09:22:58   6                    THE COURT:  Okay.  Give me your full name,

           7   please, sir.

09:22:59   8                    THE DEFENDANT:  My name is Sohil Usmangani

           9   Vahora.

09:23:04  10                    THE COURT:  And how old are you?

09:23:05  11                    THE DEFENDANT:  I'm 38 years, sir.

09:23:07  12                    THE COURT:  And where were you born?

09:23:09  13                    THE DEFENDANT:  I was born in India.

09:23:10  14                    THE COURT:  All right.  So you're a

          15   citizen of India by birth?

09:23:13  16                    THE DEFENDANT:  Yes, sir.

09:23:14  17                    THE COURT:  Do you have any legal status

          18   here in the United States?

09:23:16  19                    THE DEFENDANT:  Yes.  I'm a permanent

          20   resident, green card holder.

09:23:20  21                    THE COURT:  Okay.  Legal permanent

          22   resident?

09:23:22  23                    THE DEFENDANT:  Yes, sir.

09:23:22  24                    THE COURT:  All right.  Where did you grow

          25   up?

09:23:23  1                    THE DEFENDANT:  I grew up in India.  I

2      came here at the age of 21 as a U.S. student --

09:23:29  3                    THE COURT:  Okay.

09:23:30  4                    THE DEFENDANT:  -- as an F-1 student and

5      I'm residing here in Chicago around 16 years.

09:23:36  6                    THE COURT:  Okay.  So you grew up in

7      India.  You attended school growing up?

09:23:41  8                    THE DEFENDANT:  Yeah.

09:23:41  9                    THE COURT:  And did you learn English in

10      India?

09:23:44 11                    THE DEFENDANT:  Yeah.

09:23:45 12                    THE COURT:  Okay.  And how far in school

13      did you go in India?

09:23:48 14                    THE DEFENDANT:  I went for the bachelor's

15      in India for a bachelor's of commerce for the business,

16      yeah.  I came here to the United States for my master's

17      for business administration, yeah.

09:23:57 18                    THE COURT:  Okay.  And did you come to

19      Chicago?

09:23:59 20                    THE DEFENDANT:  Yeah, I came in Chicago;

21      and my college was in Ohio, Findlay.

09:24:05 22                    THE COURT:  In Findlay, Ohio?

09:24:08 23                    THE DEFENDANT:  Yes, sir.  Yes, sir.

09:24:09 24                    THE COURT:  Okay.  All right.  Believe it

25      or not, I actually know where that is.

09:24:16  1          All right.  Have you ever had or ever

2    needed to have any kind of treatment for any kind of

3    mental health condition?

09:24:23  4          THE DEFENDANT:  Mental health, no, Your

5    Honor, never had.

09:24:26  6          THE COURT:  Have you ever had or ever

7    needed to have any kind of treatment for any kind of

8    substance abuse problem like addiction to drugs or

9    alcohol?

09:24:33 10          THE DEFENDANT:  No, never have any.

09:24:36 11          THE COURT:  All right.  And as you stand

12   here today, are you under the influence of any kind of

13   drug, medication, alcoholic beverage, anything that

14   would affect your ability to think clearly?

09:24:44 15          THE DEFENDANT:  Not really.  I just -- I'm

16   just a sugar patient, and I take insulin.  I don't think

17   that affects.

09:24:51 18          THE COURT:  All right.  But does that

19   affect your ability to think?

09:24:53 20          THE DEFENDANT:  No, Your Honor.

09:24:54 21          THE COURT:  Okay.  Good.  Have you gone

22   over the indictment?  That is the written charges that

23   the government has made against you.  Have you gone over

24   those with Mr. Troiani?

09:25:03 25          THE DEFENDANT:  Yes, Your Honor.

09:25:04  1                    THE COURT:  All right.  And have you

2    talked to him not only about the charges against you but

3    also talked with him about any defenses you might have

4    to those charges?

09:25:11  5                    THE DEFENDANT:  Yes, Your Honor.  I talked

6    with him.

09:25:12  7                    THE COURT:  And are you satisfied with the

8    advice and explanations he's given you?

09:25:15  9                    THE DEFENDANT:  Yes, Your Honor.

09:25:16 10                    THE COURT:  All right.  Mr. Troiani, any

11    problems with communicating with Mr. Vahora?

09:25:21 12                    MR. TROIANI:  No, Your Honor.

09:25:22 13                    THE COURT:  Any reason to think he's not

14    competent?

09:25:24 15                    MR. TROIANI:  No, Your Honor.

09:25:24 16                    THE COURT:  All right.  Mr. Vahora,

17    because you're here entering a guilty plea, it's

18    important that I know you're doing so voluntarily.  Has

19    anyone tried to make you or force you into pleading

20    guilty?

09:25:33 21                    THE DEFENDANT:  No, Your Honor.

09:25:33 22                    THE COURT:  Has anyone promised you

23    anything in order to try to get you to plead guilty?

09:25:37 24                    THE DEFENDANT:  Yes, Your Honor, like a

25    substantial assistance if I like --

09:25:42  1          THE COURT:  I didn't hear that.

09:25:43  2          THE DEFENDANT:  Like a downward departure

       3  if I do substantial assistance.

09:25:48  4          THE COURT:  Okay.  Let me back up.  Let's

       5  set aside the plea agreement.

09:25:51  6          MR. TROIANI:  It's not in the plea

       7  agreement, Your Honor.

09:25:53  8          THE COURT:  Yeah.  Let's set aside the

       9  plea agreement.  Outside of the plea agreement, has

      10  anyone promised you anything to try to get you to plead

      11  guilty?

09:25:59 12          THE DEFENDANT:  Outside the plea

      13  agreement?  Yeah.  It's like a substantial assistance if

      14  I give the government any --

09:26:08 15          MS. BAUMAN:  Your Honor, if I may, just to

      16  be absolutely 100 percent clear, there is no promise of

      17  a substantial assistance or a downward departure.

09:26:16 18          THE COURT:  No.  And I understand that.

09:26:19 19          MS. BAUMAN:  Okay.

09:26:19 20          THE COURT:  All right.  Well, let's talk

      21  about the plea agreement then.

09:26:22 22          MR. TROIANI:  Yes.

09:26:23 23          THE COURT:  You've entered into a plea

      24  agreement that is 16 pages in length.  Pages 15 and 16

      25  are an addendum.  The actual agreement itself goes

1  through page 14.  I'm going to show you page 13 and ask

2  you if that's your signature right there.

09:26:40  3            THE DEFENDANT:  Yes, Your Honor.

09:26:41  4            THE COURT:  And then going back to the

5  very last page, page 16, is that your signature?

09:26:48  6            THE DEFENDANT:  Yes, Your Honor.

09:26:49  7            THE COURT:  All right.  Now did you read

8  these documents and go over them with Mr. Troiani so

9  that when you signed these documents you understood

10  exactly what you were agreeing to?

09:26:59  11            THE DEFENDANT:  Yes, Your Honor.

09:27:00  12            THE COURT:  All right.  All the provisions

13  in the plea agreement are important, but let me

14  highlight a couple for you.  First of all, you're

15  pleading guilty to Count One of the indictment.  Count

16  One charges you with conspiracy to commit mail fraud and

17  wire fraud in violation of Title 18, United States Code

18  Section 1349.  Do you understand, Mr. Vahora, that's the

19  charge you're pleading guilty to?

09:27:25  20            THE DEFENDANT:  Yes, Your Honor.

09:27:26  21            THE COURT:  Do you understand the maximum

22  penalty in a case like this can be as much as 20 years

23  in jail, a fine of $250,000 and three years of

24  supervised release?

09:27:34  25            THE DEFENDANT:  Yes, Your Honor.

09:27:36  1              THE COURT:  All right.  Now the government

2     has agreed in exchange for your guilty plea to recommend

3     to the Court that the remaining charges against you be

4     dismissed and that you get full acceptance, full

5     responsibility under our guideline range.  Do you

6     understand that?

09:27:54  7              THE DEFENDANT:  Yes, Your Honor.

09:27:55  8              THE COURT:  All right.  Do you understand,

9     Mr. Vahora, that I can follow that agreement; but I

10    don't have to follow that agreement?

09:28:03 11              THE DEFENDANT:  Yes, Your Honor.

09:28:03 12              THE COURT:  I could accept your guilty

13    plea here today, later on not allow you to withdraw it;

14    and it's possible that I can sentence you to something

15    higher than you might anticipate.  Do you understand

16    that?

09:28:18 17              THE DEFENDANT:  Yes, Your Honor.

09:28:19 18              THE COURT:  Okay.  Now in paragraph 5 of

19    your agreement with the government, there's a little

20    section about cooperation and possible downward

21    departures.  I want to make sure on the record that you

22    understand that the United States has not promised you

23    that.  It's in the agreement, and it's possible; but

24    right now it's not assured.  Do you understand that?

09:28:46 25              THE DEFENDANT:  Yes, Your Honor.

09:28:48  1          THE COURT:  Okay.  Have you talked to

         2   Mr. Troiani about how sentencing works in federal court?

09:28:57  3          THE DEFENDANT:  Yes, Your Honor.

09:28:58  4          THE COURT:  So you understand that in

         5   addition to looking at the statutes and the maximum

         6   penalty that I just went over, we look at sentencing

         7   guidelines; and the sentencing guidelines -- in fact,

         8   Ms. Awad had them a few minutes ago.  I'm looking.

         9   There's -- in fact, here's mine.

09:29:13 10          They're contained in this manual right

        11   here; and what will happen is if I accept your guilty

        12   plea here today, the probation department will make an

        13   investigation.  They'll look at the crime to which

        14   you've pled guilty.  They'll look at it in related

        15   relevant conduct, and they'll look at any criminal

        16   history that you might have.  And when they take those

        17   facts and apply the guidelines to them, it produces a

        18   range of months.  And I take that range of months, and

        19   obviously I follow the dictates of the wire fraud

        20   statutes; but I also look at Title 18 -- Title 18,

        21   United States Code Section 3553(a).  And that statute

        22   tells a judge when he sentences an individual, he should

        23   look at the nature and circumstances of the offense and

        24   the history and characteristics of the defendant and

        25   that the sentence imposed should reflect the seriousness

of the offense, promote respect for the law, provide

just punishment for the offense, afford adequate

deterrence of criminal conduct, protect the public from

future crimes of the defendant and provide a defendant

with needed vocational training, educationa opportunity,

medical care, things of that nature.  And, Mr. Vahora,

those are the facts I look at when I formulate the

sentence.  Do you understand?

09:30:20    THE DEFENDANT:  Yes, Your Honor.

09:30:20    THE COURT:  All right.  Do you understand

as you stand here today, I don't know what that

guideline range is going to be because they haven't done

the investigation yet?

09:30:26    THE DEFENDANT:  Yes, Your Honor.

09:30:27    THE COURT:  There are times and

circumstances where I can de part upwards or downwards

from those guidelines as long as I don't exceed the

maximum penalties allowed by law.  Do you understand?

09:30:37    THE DEFENDANT:  Yes, Your Honor.

09:30:38    THE COURT:  All right.  Have you talked to

Mr. Troiani about how the statutes and guidelines work

together and how they might apply in your case?

09:30:44    THE DEFENDANT:  Yes, Your Honor.

09:30:44    THE COURT:  All right.  Good.  You

understand if you're given a term of imprisonment, you

1    will not be released on parole because parole has been

2    abolished from the federal prison system?

09:30:55    3                    THE DEFENDANT:  Yes, Your Honor.

09:30:55    4                    THE COURT:  If you're given a term of

5    supervised release, that term of supervised release will

6    have certain conditions on it; and if you violate those

7    conditions, you could be looking at further time in

8    jail.  Do you understand?

09:31:03    9                    THE DEFENDANT:  Yes, Your Honor.

09:31:03    10                    THE COURT:  And if you're given further

11    time in jail, there's a possibility you might not get

12    credit for the time you've already spent on supervised

13    release.  Do you understand that?

09:31:10    14                    THE DEFENDANT:  Yes, Your Honor.

09:31:11    15                    THE COURT:  There are times and

16    circumstances after a conviction where the Court can

17    order forfeiture of certain property to the government

18    or order certain restitution be made to victims of

19    crimes.  Do you understand?

09:31:24    20                    THE DEFENDANT:  Yes, Your Honor.

09:31:27    21                    THE COURT:  You're pleading guilty to a

22    felony, and as such you could lose certain civil rights.

23    You could lose the right to vote, the right to sit on a

24    jury, the right to hold certain public offices.  You

25    could lose the right to possess a firearm.  Do you

1    understand that?

09:31:39    2              THE DEFENDANT:  Yes, Your Honor.

09:31:39    3              THE COURT:  There's a $100 felony

4    assessment which I will impose against you if I find you

5    guilty.  Do you understand?

09:31:45    6              THE DEFENDANT:  Yes, Your Honor.

09:31:45    7              THE COURT:  And finally as a citizen of

8    India, there could be immigration consequences to you

9    pleading guilty.  You could be deported and later on

10    denied reentry back into the United States.  Do you

11    understand that?

09:31:55   12              THE DEFENDANT:  Yes, Your Honor.

09:31:56   13              THE COURT:  All right.  I'm sure you

14    understand this, but let me go over it with you.  You

15    understand you don't have to plead guilty; you can plead

16    not guilty and have a trial?

09:32:05   17              THE DEFENDANT:  Yes, Your Honor.

09:32:06   18              THE COURT:  As part of your right to a

19    trial, you have a right to a trial by jury; and you have

20    a right to be represented by a lawyer at the trial.  And

21    if you can't afford a lawyer, the Court would appoint

22    you one free of charge.  Do you understand that?

09:32:17   23              THE DEFENDANT:  Yes, Your Honor.

09:32:17   24              THE COURT:  As part of your right to a

25    trial, you have a right to see the government's evidence

1    against you and hear their witnesses testify and have

2    those witnesses cross-examined.  Do you understand?

09:32:27    3             THE DEFENDANT:  Yes, Your Honor.

09:32:27    4             THE COURT:  As part of your right to a

5    trial, you have a right to call witnesses to come and

6    testify for you; and the Court can subpoena those

7    witnesses and make them testify.  Do you understand?

09:32:36    8             THE DEFENDANT:  Yes, Your Honor.

09:32:37    9             THE COURT:  As a defendant in a trial, you

10    have a right to choose whether or not you testify; and

11    if you choose not to testify, that fact cannot be used

12    against you.  Do you understand that?

09:32:46    13             THE DEFENDANT:  Yes, Your Honor.

09:32:47    14             THE COURT:  As a defendant in a trial you

15    have a right to be presumed innocent, and the government

16    would have to prove your guilt beyond a reasonable

17    doubt.  Do you understand, sir?

09:32:55    18             THE DEFENDANT:  Yes, Your Honor.

09:32:55    19             THE COURT:  All right.  Mr. Vahora, do you

20    understand by pleading guilty there won't be a trial?

21    You'll have given up your right to a trial and all these

22    other rights that go along with that.

09:33:04    23             THE DEFENDANT:  Yes, Your Honor.

09:33:05    24             THE COURT:  There are times and

25    circumstances when you can appeal any sentence I may

| | 1 | impose against you.  Do you understand that, sir? |

09:33:13  2    THE DEFENDANT:  Sir, we have a plea,

3  right?

09:33:17  4    MR. TROIANI:  He is explaining that to you

5  right now.

09:33:19  6    THE DEFENDANT:  Oh, yeah.

09:33:21  7    THE COURT:  Do you understand, Mr. Vahora,

8  after I sentence you there may be a time after that when

9  you can appeal any sentence I may impose against you?

09:33:30  10    THE DEFENDANT:  Yes.

09:33:31  11    THE COURT:  There may be certain avenues

12  of appeal that may be foreclosed by you pleading guilty.

13  Do you understand that, sir?

09:33:39  14    THE DEFENDANT:  Yes, sir.

09:33:39  15    THE COURT:  All right.  Now I don't see an

16  appeal waiver in this.

09:33:48  17    MR. TROIANI:  There is not one, Your

18  Honor.

09:33:48  19    THE COURT:  Okay.

09:33:49  20    MS. BAUMAN:  By agreement of the parties,

21  there is not a waiver of appeal.

09:33:52  22    THE COURT:  All right.  Mr. Vahora, do you

23  feel like you understand the consequences of pleading

24  guilty?

09:33:57  25    THE DEFENDANT:  Yes, sir.

09:33:58    1              THE COURT:  All right.  Good.

2    Mr. Troiani, will Mr. Vahora waive a formal reading of

3    the indictment?

09:34:04    4              MR. TROIANI:  Yes, Your Honor.

09:34:05    5              THE COURT:  All right.  In that case,

6    Ms. Bauman, if the government was called upon to prove

7    the guilt of Mr. Vahora, what facts would it bring forth

8    to the Court?

09:34:14    9              MS. BAUMAN:  Yes, Your Honor.  If this

10    case were tried, the following facts among others would

11    be offered to establish defendant's guilt and prove them

12    beyond a reasonable doubt.  This case involves a

13    telemarketing scheme perpetrated against victims across

14    the United States.  The scheme originates from call

15    centers in India.

09:34:30    16              One common script used in the scheme,

17    coercing victims into believing they are under

18    investigation by agents of federal government agencies.

19    The agent on the phone convinces the victim that the

20    only way to clear his or her name from investigation is

21    to send funds to the agent and his or her associates.

22    Victims were instructed to send funds in various ways.

09:34:50    23              One way involved the victim buying gift

24    cards at retail stores and reading the redemption codes

25    over the phone to the agent.  Once the fraud ring had

1    control of the redemption codes, runners in the United

2    States would quickly deplete the funds from the gift

3    cards by buying new gift cards or merchandise.

09:35:08   4         Another way involved the victim mailing

5    U.S. currency in a package shipped via a mail carrier

6    such as Federal Express to a name and address provided

7    by the agent.  The package would then be picked up or

8    received by a runner in the United States using an alias

9    and a fake ID.  The runner would dispose of the U.S.

10   currency according to instructions received from the

11   criminal enterprise.

09:35:27   12        Between 2017 and 2020, defendant, Sohil

13   Vahora, worked with a team of runners in the United

14   States to liquidate victim gift cards and pick up victim

15   packages in the greater Chicago area and across the

16   United States.  The investigation identified four

17   runners who worked with Vahora in the scheme.  Zaheen

18   Malvi, Amirsinh Diwan, unindicted co-conspirator Number

19   1, and unindicted co-conspirator Number 2.

09:35:53   20        All these individuals including the

21   defendant knew that the packages and gift cards

22   contained victims' money.  Malvi and Diwan, also known

23   as Hassan, were two runners identified during the

24   investigation.

09:36:05   25        In 2017 investigators received reports

1    from multiple victims who had been scammed over the

2    phone by individuals claiming to be IRS agents.  The

3    victims had purchased Target gift cards at the scammers'

4    instructions.

09:36:18    5         Agents sent the redemption codes from the

6    victims' gift cards to Target corporate security.

7    Surveillance footage and transaction records returned

8    from Target showed Malvi and Diwan engaged in

9    transactions with victims' gift card codes or gift card

10   codes directly derived from victims' gift cards.

09:36:37    11        Investigators learned the identities of

12   Malvi and Diwan by interviewing a witness, witness

13   number one, who was seen on Target surveillance footage

14   with Malvi.  In January 2018, witness number one told

15   investigators that he was hired to drive to Target

16   stores in the Chicago area.  Witness number one knew

17   that -- said that he knew Malvi and Diwan were using

18   Target gift cards to buy iTunes gift cards.

09:37:00    19        In addition to liquidating victim gift

20   cards, Diwan also picked up victim packages at FedEx

21   counters located at Walgreen stores.  Surveillance

22   footage from multiple Walgreen stores showed Diwan

23   picking up victim packages between May 2019 and

24   November 2019.  Investigators have identified 16 victim

25   packages mailed to known aliases of Diwan.  FedEx and

1   T-Mobile subpoena returns showed that Vahora tracked

2   three packages that had been mailed by victims of the

3   scheme to known aliases of Diwan.

09:37:30   4   Unidenti- -- unindicted co-conspirator

5   Number 1, UC Number 1, is another runner identified in

6   the investigation.  Investigators identified more than

7   180 victim packages mailed to known aliases of UC

8   Number 1.  Most of these packages were mailed to

9   Walgreen stores in Houston, Texas, within the Southern

10   District of Texas.  UC Number 1 was charged in the

11   Southern District of Texas and pled guilty to one count

12   of conspiracy to commit mail fraud.

09:37:57   13   UC Number 1 debriefed with investigators

14   and admitted to liquidating victim gift cards in

15   addition to picking up victim packages.  UC Number 1

16   stated that he met Vahora in Chicago and began working

17   for him in the call center scheme in approximately 2016.

18   UC Number 1 stated that his first job for Vahora was

19   driving Malvi around the country as Malvi liquidated

20   gift cards.  After some time UC Number 1 began

21   liquidating gift cards himself, and a new hire was -- a

22   new driver was hired for Malvi.  UC Number 1 stated that

23   Malvi described to him the telemarketing scams that were

24   being used by Indian call centers to get victims to

25   provide the gift cards including the government

1    impersonation scam.

09:38:38    2    UC Number 1 stated that he began picking

3    up victim packages in approximately May 2019.  UC

4    Number 1 stated that Vahora had partnered with another

5    individual in the Chicago area known to UC Number 1 as

6    Nick but later identified as Hardik Jayantilal Patel and

7    that he worked with both Nick and Vahora during the time

8    UC Number 1 picked up packages.  FedEx and T-Mobile

9    subpoena returns showed that Vahora tracked five

10    packages that had been mailed by victims of the scheme

11    to known aliases of UC Number 1.

09:39:10    12    Unindicted co-conspirator Number 2, UC

13    Number 2, is another runner identified in this

14    investigation.  Investigators have identified more than

15    100 victim packages mailed to known aliases of UC

16    Number 2.  UC Number 2 was charged in the Southern

17    District of Texas and pled guilty to one count of

18    conspiracy to commit mail fraud.  UC Number 2 debriefed

19    with investigators and admitted to liquidating gift

20    cards in addition to picking up victim packages.

09:39:34    21    UC Number 2 stated that he met Vahora in

22    Chicago and began working with him in the call center

23    scheme in approximately 2017.  UC Number 2 stated that

24    his first job for Vahora was driving Malvi around the

25    country as Malvi liquidated gift cards.  After some time

1  UC Number 2 began liquidating gift cards too.  UC

2  Number 2 stated that Malvi described to him the

3  telemarketing scams that were being used by Indian call

4  centers to get victims to provide the gift cards.

09:40:02  5      UC Number 2 stated that he moved to

6  Arkansas in December 2017 and that he lived in a motel.

7  UC Number 2 stated that Malvi moved to the hotel after

8  UC Number 2.  UC Number 2 stated that Malvi began using

9  the motel's address to receive victim packages mailed to

10  fictitious guests.  UC Number 2 stated that he began

11  picking up victim packages using fake IDs in

12  approximately December 2019.  FedEx and T-Mobile

13  subpoena returns showed that Vahora tracked one package

14  that had been mailed by a victim of the scheme to a

15  known alias of UC Number 2.

09:40:35  16      To date investigators have identified

17  hundreds of victims who mailed cash to these runners or

18  provided gift cards later liquidated by these runners.

19  Not all victims have been identified, and not all

20  identified victims have been interviewed.  Many victims

21  reported losing money in other ways because of the same

22  fraudulent scheme such as by purchasing gift cards and

23  giving redemption cards over the phone, by mailing cash

24  to runners other than Diwan, Malvi, UC Number 2, or UC

25  Number 3 or by wiring funds to bank accounts.

09:41:07  1    THE COURT:  All right.  Mr. Vahora, did

2    you understand the factual summary Ms. Bauman just read?

09:41:13  3    THE DEFENDANT:  Yes, Your Honor.

09:41:14  4    THE COURT:  Are those facts true?

09:41:15  5    THE DEFENDANT:  Yes, Your Honor.

09:41:15  6    THE COURT:  And is that why you're

7    pleading guilty because those facts are true?

09:41:19  8    THE DEFENDANT:  Yes, Your Honor.

09:41:20  9    THE COURT:  You're pleading guilty of your

10    own free will?

09:41:22  11    THE DEFENDANT:  Yes, Your Honor.

09:41:22  12    THE COURT:  And pleading guilty because

13    you are guilty?

09:41:24  14    THE DEFENDANT:  Yes, Your Honor.

09:41:25  15    THE COURT:  All right, sir.  Knowing and

16    understanding the charge in Count One of the indictment,

17    having conferred with your attorney and having received

18    his advice and counsel, knowing the maximum penalty that

19    can be imposed and the other consequences of a guilty

20    plea, knowing of your rights to a trial and rights

21    associated with a trial and knowing how the sentence

22    will be determined, how do you plead to the charge in

23    Count One of the indictment, guilty or not guilty?

09:41:46  24    THE DEFENDANT:  I plead guilty.

09:41:47  25    THE COURT:  All right.  Counsel, do either

of you have any questions for Mr. Vahora?

09:41:54    MS. BAUMAN:  Nothing from the government, Your Honor.

09:41:56    MR. TROIANI:  Your Honor, I have no questions for Mr. Vahora.  I do believe that the plea agreement that we submitted to the Court has the last portion of the sentence on page 10 where it says "or wire funds to bank accounts."  I believe that was part of the overall scheme, not a direct act of Mr. Vahora.

09:42:16    MS. BAUMAN:  That is correct, Your Honor. That last paragraph of the factual statement is a description of the ways that the victims of this scheme lost money other than to Mr. Vahora's cell of runners, so just to clarify.

09:42:29    THE COURT:  Okay.  All right.  Have I complied with the requirements of Rule 11 for taking a guilty plea?

09:42:34    MR. TROIANI:  Yes, Your Honor.

09:42:35    MS. BAUMAN:  Yes, Your Honor.

09:42:36    THE COURT:  All right.  It's the finding of this Court in the case of United States of America versus Sohil Usmangani Vahora that the defendant is fully competent and capable of entering an informed plea, that defendant is aware of the nature of the -- nature of the charges and the consequences of the plea

1  and that the plea of guilty is a knowing and voluntary

2  plea supported by an independent basis in fact

3  containing each of the essential elements of the

4  offense.  The plea is, therefore, accepted; and the

5  defendant is now adjudged guilty of the offense charged

6  in Count One of the indictment.

09:43:09  7           All right.  Mr. Vahora, I have accepted

8  your guilty plea and found you guilty.  The next step in

9  the process will be the investigation by the probation

10 office which I talked with you earlier about.  As part

11 of that investigation, they're going to want to

12 interview you; and when they do that, you want to be

13 sure Mr. Troiani is present.  Do you understand?

09:43:28  14           THE DEFENDANT:  Yes, Your Honor.

09:43:29  15           THE COURT:  All right.  The investigation

16 and preparation of the presentence report will be

17 completed by January 19th.  The government gets a copy

18 of it.  You get a copy of it.  Go over it with

19 Mr. Troiani; make any kind of additions, corrections,

20 modifications, any objections.  And let's have those on

21 file by February 2nd.  If there are no objections, I'd

22 like a statement to that effect signed by you and

23 Mr. Troiani filed by that same February 2nd deadline.

24 Then the final report will be due to the Court on the

25 16th of February, and the case is set for sentencing on

```
                 1   February 22nd at 8:30.

09:44:03         2             THE DEFENDANT:  Thank you, Your Honor.

09:44:04         3             THE COURT:  All right.  Counsel, is there

                 4   anything else we can take up with Mr. Vahora?

09:44:08         5             MR. TROIANI:  Your Honor, I'd ask -- and I

                 6   don't -- I believe the government -- we're going to ask

                 7   that this be sealed at this point.  Is that correct?

09:44:13         8             MS. BAUMAN:  Well, the plea agreement was

                 9   designated to be filed under seal.

09:44:17        10             MR. TROIANI:  Just making sure.

09:44:19        11             THE COURT:  All right.

09:44:19        12             MS. BAUMAN:  The government has something.

                13   It's not related to Mr. Vahora directly, but it's about

                14   the related case.  We do have a material witness who is

                15   in custody for Mr. Vahora's trial.  There's a related

                16   case.  The material witness is unindicted co-conspirator

                17   Number 1 described in the factual basis.  We have a

                18   pending case against the co- -- the comanager of that

                19   runner.  And so we'll be filing a motion to have that

                20   person designated a material witness in the related case

                21   as well so that they stay in custody.  I just wanted to

                22   let the Court know that that's coming.  I'll talk to the

                23   marshals about -- I just want to make sure that this

                24   person is not released while the other case is still

                25   pending and still pending trial.
```

```
09:45:03   1              THE COURT:  Okay.  All right.  I think
           2    we'll excuse Mr. Vahora to go with the marshals; and
           3    y'all are, likewise, discharged.
09:45:12   4              MR. TROIANI:  Thank you, Your Honor.  You
           5    have a good day.
09:45:12   6              THE COURT:  We'll stand adjourned.
09:45:12   7                 (Proceedings concluded.)
09:45:12   8                    *  *  *  *  *
09:45:12   9      I, Mary Nancy Capetillo, certify that the foregoing
          10    is a correct transcript from the record of proceedings
          11    in the above matter.
09:45:12  12    March 11, 2025
09:45:12                          /s/MaryNancyCapetillo
09:45:12  13                      Signature of Court Reporter
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```